1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

9

Felipe Gabriel Samaniego-Lugo,

No. CV 11-0623-TUC-RCC (BPV)

10

Petitioner,

**REPORT AND
RECOMMENDATION**

11

vs.

12

Charles L Ryan, et al.,

13

Respondents.

14

15        On September 22, 2011, Petitioner, Felipe Gabriel Samaniego Lugo, an inmate

16
17
confined in the Corrections Corporation of America (CCA) in Florence, Arizona, filed a

18
*pro se* Petition for Writ of Habeas Corpus by a Person in State Custody, pursuant to Title

19
28, U.S.C. § 2254. (Doc. 1)[1] Respondents have filed an answer to the petition (Answer)

20
with exhibits A through CC attached. (Doc. 14). Petitioner did not file a reply.

21

22        Pursuant to the Rules of Practice of this Court, this matter was referred to

23
Magistrate Judge Bernardo P. Velasco for a Report and Recommendation.

24        For the reasons discussed below, the Magistrate Judge recommends that the

25
District Court enter an order DISMISSING the Petition as untimely.

26

27

28        [1] "Doc." refers to the documents in this Court's file.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Proceedings in the Trial Court

Petitioner was indicted in September 2007 on charges of armed robbery, theft of a means of transportation, and aggravated assault. (Doc. 14, Ex. A.) In November 2007, believing that he may have been suffering from a psychotic episode brought on by medication given to him at the Southeastern Medical Center, Petitioner filed a motion for a psychological evaluation pursuant to Arizona Rule of Criminal Procedure 11 to determine his mental status at the time he committed the offense. (Doc. 14, Ex. B.) At a hearing on the motion Petitioner argued that just prior to the incident, while he was in alcohol withdrawal, he received medication intravenously at a hospital and thereafter went home where it was reported he was "acting inappropriately, bizarrely." (Doc. 14, Ex. C, at 3). Petitioner refused to return to the hospital, and has very little memory of what happened next until he woke up in a prison in Mexico. (*Id.*) The trial court denied the motion as premature, indicating that the facts presented were analogous to the facts involved in a DUI, and would not establish a defense in Petitioner's case. (Doc. 14, Ex. C, at 7-8; Ex. D).

Pursuant to a plea agreement, Petitioner pled guilty on January 28, 2008, to attempted armed robbery and attempted theft of a means of transportation, and the aggravated assault charge was dismissed. (Doc. 14, Exs. E, F, G.) Before the sentencing date Petitioner filed a motion through counsel to withdraw from the plea agreement and a *pro per* motion to withdraw from the plea and to terminate counsel. (Doc. 14, Ex. H, I) Both those motions alleged that Petitioner had not been in control of his actions at the

time of the crime because of medication he had been given at the hospital before the incident. (*Id*.) The trial court denied the motion on February 25, 2008, and sentenced Petitioner that same day to concurrent prison terms totaling 8 years. (Doc 14, Ex. J, at 28–31 and K.)

### B.   Petition for Post-Conviction Relief

On March 3, 2008, Samaniego Lugo filed a notice of post-conviction relief. (Doc. 14, Ex. L). On May 8, 2008, counsel filed a notice in lieu of petition for post-conviction relief, notifying the court that, having reviewed trial counsel's file, legal research on intoxication from prescribed drugs, police reports, hospital records and court transcripts, and having conferred with Petitioner's mother, the Deputy County Attorney assigned to the case, and trial counsel, counsel believed that there was no basis for a colorable claim of ineffective assistance of trial counsel for failure to reasonably investigate the drug Ativan and its impact on Petitioner, or error in trial counsel's legal research regarding possible defenses of insanity, diminished capacity, voluntary intoxication or prescribed medicine.   (Doc. 14, Ex. M, at 2-3). Samaniego Lugo filed his *pro per* petition on December 12, 2008. (Doc. 14, Ex. R). The trial court dismissed the petition without a hearing, addressing the merits of the petition and finding that none of the claims raised presented a material issue of fact or law which would entitle Petitioner to relief under Rule 32. (Doc. 14, Ex. U).

On March 30, 2009, Petitioner filed a "Notice of Appeal." (Doc. 14, Ex. V). The Arizona Court of Appeals construed this as Petitioner's attempt to file a petition for review with that court from the trial court's denial of post-conviction relief but, because it

was not in compliance with Rule 32.9, Ariz. R. Crim. P., the court of appeals allowed petitioner time to file a petition that complied with the rule. (Doc. 14, Ex. W). Petitioner timely filed a petition for review with the court of appeals in May 2009. (Doc. 14, Ex. X.) Petitioner raised eight claims: 1) the trial court denied Petitioner a presentence report interview; 2) the prosecutor acted in bad faith by precluding a voluntary intoxication defense pursuant to A.R.S. § 13-503;  3) the court erroneously denied and precluded defenses due to the prosecutor's misconduct; 4) the prosecutor failed to disclose exculpatory evidence regarding Samaniego Lugo's mental health in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution; 5) ineffective assistance of counsel; 6) trial court error in the denial of Petitioner's motion to withdraw the guilty plea; 7) denial of request to speak with Mexican counsel in violation of the Vienna Convention; and 8) the trial court erred in denying Petitioner's Double Jeopardy claim. (Doc. 14, Ex. X.)   The court of appeals denied relief in an unpublished decision on February 2, 2010. (Doc. 14, Ex. Y.) Petitioner did not seek further review in the Arizona Supreme Court, and the mandate issued on March 22, 2010. (Doc. 14, Ex. Z.)

> C.      Federal Habeas

On September 28, 2011, Petitioner filed the federal habeas corpus petition at issue in the instant proceeding. (Doc. 1)

Petitioner challenges his judgment of conviction in the Cochise County Superior Court on February 25, 2008, for Attempted Armed Robbery and Theft of Means of Transportation in matter number CR-00606. Petitioner alleges that he was sentenced to an 8-year term of imprisonment.

1    Petitioner presents two grounds in the Petition in support of his request for habeas

2    relief:

3        (1)    "Petitioner claims that he was convicted while being incompetent [–] 'a

4    fundamental constitutional error'"; and

5

6        (2)    "Petitioner claims that there is [i]nsufficient [e]vidence to [s]upport [a]rmed

7    [r]obbery [c]onviction."

8        **II.    DISCUSSION**

9

10       A.    Standard of Review

11   Because Samaniego Lugo filed his petition after April 24, 1996, this case is

12   governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. §

13
14   2254(d) ("AEDPA").

15       B.    Timeliness

16   A one year period of limitation shall apply to an application for writ of habeas

17
18   corpus by a person in custody pursuant to the judgment of a State court. 28 U.S.C. §

19   2244(d)(1).

20   The running of this one-year period of limitations on habeas petitions for state

21
22   convictions is tolled during any period when "a properly filed application for state post-

23   conviction or other collateral review with respect to the pertinent judgment or claim is

24   pending" in any state court. *See* 28 U.S.C. § 2244(d)(2). Thus, the statute of limitations is

25
26   tolled during the pendency of a state court action for post-conviction relief. 28 U.S.C. §

27   2244(d)(2).

28   The Ninth Circuit recognizes that the AEDPA's limitations period may be

- 5 -

equitably tolled because it is a statute of limitations, not a jurisdictional bar. *Calderon v. United States Dist. Ct. (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997), overruled, in part, on other grounds by, *Calderon v. United States Dist. Ct. (Kelly),*163 F.3d 530, 540 (9th Cir. 1998). Tolling is appropriate when "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Id.*; *see also, Miranda v. Castro*, 292 F.3d 1063, 1067 (9th Cir. 2002)(stating that "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule") (citations omitted); *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003).

C.    Analysis

Respondents submit that the Petition exceeded the 1-year statute of limitations and there is no statutory or equitable basis for tolling the limitations period.  (*See* Answer, at 4-8.)  Respondents assert that Petitioner's limitations period began to run on March 5, 2010, the first day after the conclusion of the 30-day period during which Petitioner could have, but did not, petition the Arizona Supreme Court to review the Arizona Court of Appeals' February 2, 2010 memorandum decision.   Under Respondents calculation, Petitioner's federal petition, deposited in the mail for filing on September 22, 2011, is untimely, absent statutory or equitable tolling, by 202 days.

Petitioner maintains that he is entitled to equitable tolling for a period of time because he was incompetent. The Magistrate Judge finds that, pursuant to the AEDPA, the Petition filed in this Court is untimely and Petitioner is not entitled to equitable tolling.

1

### 1.      *Limitation Period Under § 2244(d)(1)(A)*

2      Samaniego Lugo had until one year after his conviction and sentence became final

3

4  to file his federal petition. The first "of-right proceeding," available under Arizona Rule

5  of Criminal Procedure 32 to criminal defendants who plead guilty is a form of "direct

6  review" within the meaning of 28 U.S.C. § 2244(d)(1)(A).  *Summers v Schriro*, 481 F.3d

7  710, 711 (9th Cir. 2007).  Thus, "AEDPA's one-year statute of limitations does not begin

8
   to run until the conclusion of the Rule 32 of-right proceeding and review of that
9

10  proceeding, or until the expiration of the time for seeking such proceeding or review."

11  *Id*; *see* 28 U.S.C. § 2244(d)(1)(A) (stating that the judgment becomes final at the later of

12
    either the conclusion of direct review or the expiration of time for seeking such review).
13

14      In Arizona, when the court of appeals grants review of a petition, but denies the

15  petition, direct review is not final until the mandate has issued. *See* Ariz.R.Crim.P. 31.23.

16  Rule 31.23(a)(1) states that "[i]f there has been no motion for reconsideration and no

17
    petition for review filed, the clerk of the Court of Appeals shall issue the mandate at the
18

19  expiration of the time for the filing of such motion or petition." Because the appellate

20  court issued a decision denying relief and petitioner did not seek review, the mandate

21
    issued on March 22, 2010, and concluded appellate review.
22

23      Petitioner had 365 days, from March 22, 2010, or until March 22, 2011, to file his

24  federal habeas petition. Under the "prison mailbox rule" a prisoner's federal habeas

25
    petition is deemed filed when he hands it over to prison authorities for mailing to the
26

27  district court. *Houston v. Lack*, 487 U.S. 266 (1988). Petitioner's federal petition

28  indicates he placed the federal petition in the prison mailing system on September 22,

2011.  Accordingly, the Magistrate Judge finds that, absent statutory or equitable tolling, the Petition is untimely by six months.

### 1.     Equitable Tolling

There appears to be no basis for statutory tolling of the limitations period, and Petitioner does not argue that statutory tolling should apply; Petitioner does, however, claim that the tolling period should be equitably tolled due to "Petitioner's mental illness and evidence of incompetence." (Doc. 1, at 36) Respondents assert that the evidence Petitioner has provided of his mental incompetence during the limitations period does not show that he was eligible for equitable tolling. The Magistrate Judge agrees.

"When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). The extraordinary circumstances requirement is a "high hurdle," *see Calderon (Beeler)*, 128 F.3d at 1289, and policy considerations counsel against equitable tolling. *Mohasco Corp. v. Silver*, 447 U.S. 807 (1980). A petitioner seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Petitioner must also establish a "causal connection" between the extraordinary circumstance and his failure to file a timely petition. *Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007).

Petitioner contends that he is entitled to equitable tolling for a five month period. (Doc. 1, at 36) It is not clear what dates Petitioner relies on to establish this five month

period. While five months would not toll the limitations period sufficiently to make the

Petition timely, the Magistrate Judge finds that Petitioner appears to assert that the time

from when the District Judge in Petitioner's federal criminal proceedings ordered an

initial competency evaluation of Petitioner, in August, 2010, or when the Court received

the report in September, 2010, concluding Petitioner was incompetent to stand trial, until

a Certificate of Competency was filed by the warden of the medical facility on Jun 29,

2011, should be included in the tolling period. This period of tolling, which the

Magistrate Judge will review and discuss below, would adequately toll the limitations

period and render the Petition timely.

Mental illness or disability can, in some circumstances, constitute an extraordinary

circumstance beyond a petitioner's control that would be sufficient to provide a basis for

equitable tolling. *Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003). Because the

standards for competency do not "exist in a vacuum," rather vary in relation to the tasks

the defendant is expected to perform, Petitioner's allegation of mental illness or

incompetency must be focused on the task at hand, analyzing Petitioner's ability to timely

file a habeas petition. *See Bills v. Clark*, 628 F.3d 1099, 1100, n.3 (9th Cir. 2010). The

mental disability must have made it impossible to comply with the filing deadline given

the particular circumstances present during the limitations period. *Bills,* 628 F.3d at 1099

(citing *Spitsyn,* 345 F.3d at 799. In applying this standard, the district courts are to

evaluate how a petitioner's mental impairment bears on his ability to file by asking the

relevant question: Did the mental impairment cause an untimely filing? *Bills, 628* F.3d at

1100, n.3 (citing *Spitsyn*, 345 F.3d at 799).  Equitable tolling is still appropriate in cases

where it would have technically been possible for a prisoner to file a petition on time but

the prisoner would likely have been unable to do so. *Bills,* 628 F.3d at 1100 n. 3. In *Bills*,

the Ninth Circuit set forth a two-part test courts should use to determine eligibility for

equitable tolling based on mental impairment:

> (1)  First, a petitioner must show his mental impairment was an
> "extraordinary circumstance" beyond his control, ... by demonstrating
> the impairment was so severe that either
>   (a) petitioner was unable rationally or factually to personally
>       understand the need to timely file, or
>   (b) petitioner's mental state rendered him unable personally to prepare
>       a habeas petition and effectuate its filing ....
>
> (2)  Second, the petitioner must show diligence in pursuing the claims to the
> extent he could understand them, but that the mental impairment made it
> impossible to meet the filing deadline under the totality of the circumstances,
> including reasonably available access to assistance.

*Bills*, 628 F.3d at 1099–1100 (internal citations and quotations omitted). The Ninth

Circuit went on to explain further:

> [T]he "extraordinary circumstance" of mental impairment can cause an
> untimely habeas petition at different stages in the process of filing by
> preventing petitioner from understanding the need to file, effectuating a
> filing on his own, or finding and utilizing assistance to file. The "totality of
> the circumstances" inquiry in the second prong considers whether the
> petitioner's impairment was a but-for cause of any delay. Thus, a
> petitioner's mental impairment might justify equitable tolling if it interferes
> with the ability to understand the need for assistance, the ability to secure it,
> or the ability to cooperate with or monitor assistance the petitioner does
> secure. The petitioner therefore always remains accountable for diligence in
> pursuing his or her rights.... [T]he petitioner must diligently seek assistance
> and exploit whatever assistance is reasonably available.

*Id*. at 1100–01.

Samaniego Lugo argues that during the limitations period, he was referred for a

competency evaluation by the District Court in a criminal matter, *United States v. Samaniego-Lugo*, Case No. CR 4:00-1236-TUC-RCC, in August, 2010, declared incompetent by Dr. Richard Hinton in September 2010, and sent to a federal medical center for restoration of competency. (Doc. 1, at 36) Petitioner alleges that he was restored to competency on June 29, 2011. (*Id*.) Petitioner alleges that his mental illness caused him to file an untimely petition, though he does not elaborate on how his mental illness contributed to the untimely filing. (*Id*.)

Petitioner moved for a determination of competency to stand trial, stating that he could not assist in his own defense because he was depressed and distraught over the death of his brother and concerned for his own safety based on the circumstances surrounding his brother's death. (CR 00-1236-TUC-RCC, Doc. 192)[2] The District Court ordered an evaluation (CR 00-1236, Doc. 193), and received a psychiatric report from Richard Hinton, Ph.D., conducted on September 20, 2010, in which Dr. Hinton concluded that Mr. Samaniego Lugo suffers from a mental disease or defect which renders him incompetent to the extent that he is unable to understand the nature and consequences of the proceeding against him or to assist properly at his final disposition hearing. (CR 00-1236, Doc. 205 – SEALED). Petitioner attached this report to his

---

[2] The Court notified the parties of the Court's intent to take judicial notice of all records relating to Petitioner's mental competency proceedings in *United States v. Samaniego-Lugo*, Case No. CR 4:00-1236-TUC-RCC, specifically the evidence submitted under seal relating to the determination of Petitioner's mental competency and subsequent restoration, and allowed the parties an opportunity to respond to the Court's notice. (Doc. 15) The parties were further notified that failure to respond would be deemed a consent to the Court's taking of judicial notice. (*See* Doc. 15, at 3) Because Respondent did not file a response, and Petitioner consents to the Court's taking of judicial notice (*see* Doc. 16, at 2) the Court hereby takes judicial notice of all records relating to Petitioner's mental competency proceedings in *United States v. Samaniego-Lugo*, Case No. CR 4:00-1236-TUC-RCC.

Petition as an exhibit. (Doc. 1, Attachment). Of note, Dr. Hinton concluded that, although Petitioner was extremely anxious, with some evidence of agitation, difficulty concentrating, and symptoms of a mood disorder, with some delusional thinking related to the court system, Petitioner was having difficulty maintaining focus on his federal supervised release violation because he was preoccupied with the state criminal matter which is the focus of this federal habeas petition. (*Id.*)

On November 5, 2010, the District Court found Petitioner not competent to proceed in his federal criminal matter, and ordered Petitioner to a federal medical facility for restoration to competency. (CR 00-1236, Doc. 206) A Certificate of Competency was filed by the warden of the medical facility, dated Jun 29, 2011. (CR 00-1236, Doc. 210 – SEALED). Attached to the certificate, was a forensic report, dated June 22, 2011, suggesting that Petitioner was acting inconsistently with his reported symptoms, "appeared to intentionally give incorrect answers to questions" in a competency restoration group, chose to respond incorrectly on a worksheet addressing the roles of counsel, seemed to be "purposely trying to provide an incorrect response" during formal interviews, scored in the low range in intellectual ability which was inconsistent with his presentation during clinical interviews, completed testing that resulted in invalid profiles and uninterpretable results, suggesting he may have intended to misrepresent himself as impaired, was administered the Structered Interview of Reported Symptoms to assess deliberate distortions in self-report symptoms, obtaining moderately elevated scores on six of the eight primary scales and highly elevated scores on one of the eight primary scales, which indicated a likelihood of feigning at 100%. *Id.* Petitioner's scores were

"characteristic of individuals who are feigning a mental disorder, and is rarely seen in clients responding truthfully." *Id*. Petitioner's inconsistent presentation suggested that he was "exaggerating cognitive deficits and symptom severity," and that there was "no diagnostic explanation for the inconsistencies in his presentation and self reports." *Id*. In the reporter's opinion, he was "exaggerating cognitive deficits and mental health problems." *Id*. Petitioner was diagnosed with Anxiety Disorder, Not Otherwise Specified (by history), Malingering, and Alcohol Abuse in a controlled environment. *Id*. The report stated that "he does not meet the criteria to be found not competent to stand trial." *Id*. The report concluded with Petitioner's prognosis: "In our opinion there is ample evidence that Mr. Samaniego-Lugo is exaggerating any mental illness he may have and is feigning his symptomology and severity. Clearly, there is secondary gain for Mr. Samaniego-Lugo to continue feigning a mental illness or to not put forth his best effort." *Id*. Though Petitioner might suffer from a mental illness, the reporter found "it is not so severe to render him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or assist properly in his defense." *Id*. Petitioner reported that "he works on his own case and writes letters to the court based on books he reads. In reviewing his records, he has written several letters to the court and made several motions on his own behalf. Throughout this evaluation, he was able to verbalize his needs and insure they were met. In other words, he was able to assert himself and negotiate a solution to problems. Thus, in our opinion he has the ability to assist counsel in preparing his defense." *Id.* Thereafter, Petitioner was re-evaluated by Dr. Hinton, who reported that "Mr. Samaniego-Lugo has symptoms of anxiety and that he

exaggerates symptoms of mental illness in order to gain advantage thus resulting in the previous diagnosis of malingering. He is not psychotic and he is cognitively intact." (CR 00-1236, Doc. 216 – SEALED)

The petitioner bears the burden of demonstrating that he or she is entitled to equitable tolling. *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006). It is clear that Samaniego Lugo has shown that he has a mental impairment. The Court must now consider whether Petitioner's impairment is severe enough to constitute an extraordinary circumstance warranting the application of the Court's equitable powers. After consideration of the psychiatric reports filed by Dr. Hinton, and the forensic report, dated June 22, 2011, from the federal medical facility, the Magistrate Judge finds that Petitioner has not demonstrated that his impairment was severe enough to warrant equitable tolling. Both the report from the federal medical facility and the re-evaluation from Dr. Hinton, concluded that shortly after Petitioner's arrival at the facility in March 2011, it became apparent that he acclimated quickly to the facility, chose to respond incorrectly to testing questions, that staff noted no evidence of psychotic thinking or delusional thoughts while he was there, and that psychological testing suggested that Petitioner was making an effort to misrepresent himself as being more impaired than he in fact was. Additionally, progress notes attached to Petitioner's "Acknowledgement of This Court's Notification to Take Judicial Notice" indicate that, both before and throughout the relevant time period Petitioner was being treated for his mental illness and mild delusional thinking, that while Petitioner was sad about his brother's death, and worried about his own safety, he was "working on his own case and spending a lot of time in the law library." (Doc. 16,

Progress Note, Central AZ Detention Center, May 25, 2010; Mental Health – Initial or Follow-up visit, July 12, 2011). Petitioner was taking Risperidone at this time, and began taking Risperadal and Vistaril, which was later changed to Risperdal and 20 mg of Prozac for reported depression and anxiety. (CR 00-1236, Doc. 210, at 6 - SEALED). Furthermore, during the same time period that Dr. Hinton initially found Petitioner incompetent to proceed to trial, Petitioner drafted six pages of correspondence with exhibits to the Justice of the Peace in Douglas, Arizona, requesting specific disclosures and an investigation into his case because he believed without the necessary disclosures and subsequent relief from his conviction, his life would be in danger in prison. (Answer, Ex. CC) After the Justice of the Peace responded that she had no jurisdiction over the case, and would forward it to the Superior Court, Petitioner responded, on September 30, 2010, (after Dr. Hinton's initial report finding Petitioner incompetent) acknowledging receipt of the letter, thanking the sender, and signaling his intention to await the Superior Court's response. (*Id.*) This exchange indicates a clear ability to think and act rationally regarding legal matters, and to correspond sufficiently and to an extent necessary to understand the need for and to effectuate a timely filing.

Petitioner has failed to show that his mental illness rendered him unable to personally understand the need to timely file or that his mental state rendered him unable to personally prepare the petition and effectuate its filing. Neither has Petitioner demonstrated that he was adequately diligent in his efforts to file a petition given his mental impairments and the assistance available to him.

Petitioner is not entitled to equitable tolling, and his federal habeas petition is

untimely. He therefore is not entitled to habeas relief.

**II.    RECOMMENDATION**

This Court recommends that the District Court, after its independent review of the record, DISMISS this action in its entirety as untimely.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Fed.R.Civ.P. 72(b).

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived.

If objections are filed the parties should use the following case number: CV 11-0623-TUC-RCC.

Dated this 16th day of November, 2012.


_____
Bernardo P. Velasco
United States Magistrate Judge